Thank you. Good morning, Your Honors. James Osgard representing Mr. Flax this morning. We've appealed all of his convictions that resulted from a jury trial. But the one I want to focus on today, the one that has the most material consequences for Mr. Flax, would be the conviction for discharge of a firearm during and in relation to a drug trafficking crime. It presents a fairly clean legal issue. There are no material factual disputes between the parties with respect to that offense. The evidence showed that Mr. Flax was a member of a gang. It showed that members of the gang sold drugs. The evidence showed that Mr. Flax carried and discharged a firearm on August 5th of 2017. And it showed, we would agree, or we would agree for purposes of the appeal, that he was a shooter for the gang. Whatever that particular term means. The evidence also showed that shooters and guns are used by gangs for a number of different reasons. And this evidence came from the experts and from the two drug dealers that were witnesses in the case. We hardly need that testimony. But the guns can protect the drugs, the proceeds, and the sellers during drug transactions, certainly. But they also protect gang members from rival gang violence or problems that they're having with other gangs. They protect, they can enhance the reputation of the gang for violence in the community. They can facilitate reprisals for personal slights between gang members or rival gang members. This is from the expert testimony. And they can allow members to assert a social standing within the gangs. That's also from the testimony of the expert. What the government had to prove in this case with respect to the shooting on August 5th, was that the discharge, one of the reasons, at least one of the reasons for the discharge of that firearm, had to do with a relationship to the drug trafficking crime. Isn't that really a jury question? I mean, you conceded a lot as far as his relationship to the gang. The fact that he was a shooter, I think the record established that this is a drug-affiliated gang or a gang that's involved in drug trafficking. He was at the location that day looking for ops, I think, looking for gang opponents. Isn't there enough there for the jury to say, look, obviously it's possible he could have been using guns for other things, but given the testimony in the record, there was sufficient evidence here for a conviction. I mean, it's inarguable the gun could have been used for other purposes, but given the evidence in the record, wasn't the jury allowed to find that in this case, it was related to or, I guess, during in relation to drug trafficking? The evidence did not show that at the time of the shooting there was anything involving drug dealing going on. There's no evidence that there were drugs present. There was no evidence that there were proceeds present. There was no evidence that there was a negotiation being undertaken at the time of the discharge of the firearm. In other words, the presence of the firearm and discharge of the firearm did not protect drugs, did not protect proceeds, did not protect a drug deal in progress. The government has an obligation to prove at least some relationship to a drug trafficking crime in order for this conviction to stand. It isn't enough that the discharge of the firearm took place that might have benefited the gang. It had to be in relationship to a drug deal, and there was no drug dealing going on. In fact, I think the only evidence of drug conspiracy anywhere near the time of this discharge was from a month earlier. Two other defendants in the case were discovered with guns and drugs at a house that Mr. Flax was not at. So the government's theory here was that the discharge of the firearm or even just the carrying of a firearm by a gang member, even if it didn't protect drug proceeds or didn't protect a drug deal or the drugs themselves, just the fact that a member of the gang possessed a gun and discharged it furnished the reputation of the gang for violence. And that had the indirect impact of making it easier for members of the gang to engage in drug dealing. And there were no cases that I can find where the courts have gone that far, have allowed that kind of attenuation between a drug deal or drug proceeds and the use or discharge of a firearm to constitute something that had a relationship to the underlying drug trafficking crime. What do you make of the Supreme Court's decision in Smith, which makes it very clear that in relation to, it's very broad as opposed to further inside. In other words, the nexus, the link, whatever you want to call it, does not have to be very tight under the in relation to language. Yes, I agree with you. And that case, of course, involved the use of guns as barter for a drug transaction. But the case is also talking about the fact that the involvement of the guns cannot be the result of accident or coincidence. And that one of the purposes of the language involving during and in relationship to, is to allay the concern that a person could be punished for committing a drug trafficking offense while in possession of a firearm, even though the firearm's presence is coincidental or entirely unrelated to the crime. Another case cited by the government, the Davis case, of course, a case in which the guns played an intrinsic role with the drug dealing. But in that case, in dicta at page 787, the court notices that it's not enough that a conspirator in a drug case possess or carry a firearm. It has to have some sort of a relationship to the drug trafficking offense. So a conspirator in a case where a drug conspirator is carrying a gun for personal protection. If there's no relationship between the presence of the gun and an underlying drug trafficking crime, that conspirator can carry a gun for personal protection and not violate 924 C, because there's no relationship beyond the fact that he's a drug conspirator between the gun that he possesses and the underlying drug conspirator. I'm supposed to take Judge Cobus's point one step further. He asked about ops and suppose that there was testimony that went just one step further and said, I'm looking for ops. And the reason why I'm looking for ops is because they have the quarter or they have the market for heroin cornered in this particular area. And so if I knock out some of their gang members, maybe we could take over this area. Would that be enough in your view, even though there's no drug transaction happening at all in that particular transaction or that particular shooting? At least in that in that situation, your honor, that we would know that there was an admission of an intent on the part of Mr. Flax to engage in an act which was directly aimed at enhancing the drug conspiracy. In this case, he was looking for ops. He was clearly looking to advance the one nine gang. You would agree with that, wouldn't you? If he's there looking for ops. And I think he conceded that this that he was a gang member and this was a gang related shooting. If I remember, we can see that he was a gang member. I don't know that we can concede that it was a gang related shooting. And there was evidence, evidence to write that the one nine gang is involved in narcotics trafficking. It's not as clear a case as Judge Strauss described. But but there is some evidence in the record, isn't that the gang traffics? There's evidence that certain members of the gang were engaged in drug dealing. Yes, there was. And was there an indication? I don't recall that your client had sold, sold drugs as well. There was evidence from one of the heroin dealers that he had seen Mr. Flax selling street level quantities of the drug by himself in bars in a neighborhood in April, about several months anywhere prior to the shooting incident. So but basically the government's theory, we submit, is not sufficient. That a jury cannot reasonably draw an inference that a discharge of a firearm was in further. I'm sorry, it was doing it in relation to a drug trafficking crime, merely because the discharge of the firearm enhanced the reputation of the gang for violence and therefore made it easier for the gang perhaps to engage in drug dealing. Is there no further questions? I'd like to reserve the rest of my time.  All right. All right. I'm not seeing. Counsel for the government. Are you there? I'm not seeing you on my screen. Your Honor, I can hear you and I can see myself. You're not able to see me. There you are. There you are. May it please the court. Good morning, Your Honors. Thomas Calhoun Lopez on behalf of the United States. I was counsel at trial. Your Honor, Mr. Flax's challenge on this question cannot survive the standard under which the question is reviewed. I think the thrust of his argument or the primary what his argument boils down to is that he might have been shooting. He might have shot Shane Webb because of a personal dispute or something unrelated to drug trafficking. But that necessarily also acknowledges the fact that he also might have shot him because of a drug related motive. And the precedent is clear that if there are conflicting hypotheses, then the verdict may not be disturbed. Here, Your Honors, the the evidence was clear that the role of firearms in this drug trafficking conspiracy was very well established, not just to protect drug dealers and their money and their drugs, but also to target rivals of the conspiracy. And this was necessary to increase the standing in the community of the gang, which in turn protected the drug dealers from any sort of harm or disrespect on the streets. And so the jury was entitled to infer that Mr. Flax went to the to that restaurant that night looking to performing his role as a shooter for the gang, which was very well established through the testimony of both cooperators, Mr. Gentle and Mr. Mack. This is especially true in light of, as Your Honors have pointed out and as Judge Covis pointed out, his his admission to the officer, the off duty officer just hours before that he was looking for the gang's enemies. And it's also true in light of Government Exhibit 29, the video of the events leading up to and including the shooting. And it shows clearly Mr. Flax engaged in in an ambush. He's he's out looking for somebody. This this wasn't just something that got out of hand. This was a these were two disparate groups clearly menacing each other. Mr. Flax can be seen approaching the back of the restaurant and drawing a pistol out of his pocket. Armed men come spilling out. The other side kind of squares off. And finally, only then does Mr. Flax retreat. And then and then the shots come. Doesn't that feed opposing counsel's argument, the fact that these two gangs were menacing each other? And let me let me let me clarify, which is to say that suppose this might have arisen out of some beef that one gang had with another. Right. So one of one of the I-9 gang members got shot by the opposing gang. And this was purely revenge, 100 percent revenge for that shooting. That would have nothing to do whatsoever with drug dealing. So, I mean, the fact they're menacing each other, doesn't that undermine sufficiency of the evidence here? Your Honor, I respectfully disagree. First of all, I don't. I think it's clear that that was not what was happening in light of the fact that the two groups began squaring off only well after Mr. Flax approached in a furtive moments. So I don't believe that that's how it started off. It's how it ended up, but it's not how it started off. But even then, Your Honor, the cooperators made clear that one of the shooter's role is to retaliate. If if if one of their side gets hit, the shooter's job is to strike back. And again, Sergeant Tuma's expert testimony at the end of trial drew that nexus clearly that this this sort of behavior is important for gangs to to maintain their credibility on the street. And if they lose that credibility, then the entire organization, including the drug trafficking wing, becomes vulnerable. Isn't the implication of this that any time you have a gang war and two gangs that that sell drugs, any shooting that happens in the course of that would necessarily satisfy this crime, that there be sufficient evidence that worries me a little bit. Maybe maybe we can go there, but isn't that essentially what we'd be saying here? I take your point, Your Honor, and I share your concern with that. I don't mean to suggest by anything I argue that there should be any kind of strict liability here or even an automatic establishment of elements. I do think that if if if an individual is a member of a gang and he discharges but he but that individual is not a part of the drug trafficking and the shooting does not advance the drug trafficking elements or conspiracy within that gang, then he would not be guilty of a 924 C violation. But I do respectfully submit that that is simply not what we have here. But I do want to be clear. I agree with you. And I think that there must be a limiting principle. I think that the limiting principle here is that the nexus was clearly established that this was Mr. Flax's role within the drug trafficking conspiracy and his shooting of Shane Webb advanced the conspiracy. OK. And Judge Strauss, I I think that your hypothetical really goes to the heart of this, which is that if if Mr. Flax had told that off duty officer before the shooting, I'm looking for the ops because they because they're there. I want to break into the heroin market. Obviously, that would have made the government's job at trial much, much easier. It would have been a much simpler way. But of course, that's not the way that drug traffickers talk. It's not the way Mr. Flax talked that night. But it gets to the point that the jury was entitled to infer that that was his intent from the circumstantial evidence. And and the direct evidence of drug trafficking, not only by members of the gang, but by Mr. Flax himself. Both cooperators, Jovan Gentle and Kenneth Mack, testified that Mr. Flax had sold controlled substances. Mr. Mack, excuse me, Mr. Gentle referred to them as drugs. He saw that Mr. Flax sold drugs. He identified specifically working with another co-defendant, Dominic Wright. And then Kenneth Mack, as Mr. Oscar mentioned, testified that Mr. Flax sold heroin in April of 2017. And your honors, your your point about the expansive nature, which we argued, of course, in our brief, the expansive nature of the during and in relation to language is important here. Temporal proximity does not automatically establish nor prohibit a finding of 924 C. Obviously, the standard, the typical case of a 924 C or I guess I would say the more for lack of a better word, the more mundane circumstances are that a firearm and a drug, a firearm and drugs are found right next to each other. And the question is whether to what extent the firearm was used. But just as that temporal and physical proximity does not automatically create a violation of 924 C, a lack of physical proximity to the drugs cannot automatically negate it. As long as the jury found that the that the discharge of the firearm had some purpose or effect or facilitated the drug trafficking conspiracy, then the conviction must stand. And clearly there was sufficient evidence for the for the jury to infer that. Your honors. That concludes my my points, unless you have any other questions. All right. Apparently not. Thank you very much. Counsel. Mr. Oscar. Thank you, your honor. Just with respect. I wanted to note that the evidence concerning his Mr. Flax's role as a shooter was not limited to any sort of claim or evidence that his role as a shooter was was strictly with respect to any drug dealing or drug conspiracy. His role in the gang, according to the testimony and the evidence was that shooters were needed in gangs in order to accomplish all of these other potential needs that the gang had for guns and shooting. For instance, a gang war. Mr. Flax, as somebody who possessed a firearm, might be involved in a gang war. He might be involved in retaliation. He might be involved in responding to some slight by another gang. His involvement as a shooter under the evidence that the government presented was very broad, not necessarily having to do with drug dealing. And the point is, is important that that if if merely enhancing the reputation of the gang for violence is where a gang is involved, at least to some extent in dealing drugs, if that's sufficient to link the possession or discharge of a firearm to the drug dealing crime, then. Virtually anyone, any young man walking around the north side of Minneapolis with a firearm, if he happens to belong to a gang, is committing a 924 C violation. It doesn't take shooting to fit the definition or the the the elements of a 924 C offense based on the testimony that was provided in this in this trial and the government's argument. It opens up the use of a 924 C charge to all kinds of conduct far beyond what any of the cases talk about in terms of limiting the application of this offense to use and use and carrying in relationship to a drug trafficking crime. We were not arguing that there were two alternative inferences that the jury could make from the evidence, one of innocence and one of guilt. Our argument is that the jury could not make a reasonable inference of guilt from the evidence. Can I ask one one follow up question to this, which is one thing that distinguishes from the series of questions I asked, even aside from the shooter and the ops point is that there is evidence that Flax was actually selling drugs himself. Maybe not as his main role in the gang, but there was evidence that he was selling drugs. And so doesn't that make this a different case and lower the concerns about sort of making this a strict liability type offense? No, actually, I think that the problem presented by that take on it is continues the strict liability issue here, because many of these young men in these neighborhoods are selling drugs from time to time and possessing guns at the same time or at other times. And that wouldn't necessarily satisfy the use of drug trafficking crime. The fact that he that he was seen selling drugs several months earlier does not does not lend support to the notion that the shooting in August had anything to do with drug dealing or drug proceeds or negotiations. There's too there's too little temporal and physical proximity between those two events to satisfy the in relation to language of the statute. I have nothing further. All right. Thank you. Counsel. Case has been well argued and it is submitted. Court will render a decision in due course. Thank you.